# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>CHAOMING CHEN,<br>aka Chris Chen, and<br>MEGAN LIN | Docket No.<br><br>MAGISTRATE'S CASE NO.<br>11-1913M |

FILED CLERK, U.S. DISTRICT COURT
AUG 15 2011
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Complaint for violation of Title 8, United States Code, Section 1325(c)

| NAME OF MAGISTRATE JUDGE<br>CHARLES F. EICK | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, CA |
|---|---|---|

| DATE OF OFFENSE<br>March 10, 2008 | PLACE OF OFFENSE<br>Los Angeles County | Address of ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

### Count One: (8 U.S.C.§ 1325(c))

On or about March 10, 2008, in Los Angeles County, within the Central District of California, defendants CHAOMING CHEN, aka Chris Chen, and MEGAN LIN knowingly and intentionally entered into a marriage for the purpose of evading a provision of the immigration laws of the United States.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: n/a

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>AARON McCLELLAN |
|---|---|
| | OFFICIAL TITLE<br>Special Agent<br>Department of Homeland Security-HSI |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE<br>August 16, 2011 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

---

AUSA: Kevin S. Rosenberg        REC: Detention and Arrest Warrants

# A F F I D A V I T

I, Aaron McClellan, being duly sworn, hereby depose and say:

1.  I am a Special Agent ("SA") with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been a SA since February 2009. I was with Customs and Border Protection ("CBP") from July 2003 until February 2009. I am presently assigned to the Investigations Branch in Los Angeles, California. As a SA, my duties include the apprehension of aliens who are in the United States illegally, enforcement of the immigration laws, and conducting investigations of suspected violations of the criminal statutes within the Immigration and Nationality Act ("INA").

**PURPOSE**

2.  This affidavit is made in support of a criminal complaint and arrest warrants charging Chaoming CHEN, AKA: Chris CHEN, and Megan LIN, with violating Title 8, United States Code, Section 1325(c), entering into marriage for the purpose of evading a provision of the immigration laws of the United States.

3.  Because the purpose of this affidavit is limited to setting forth only those facts necessary to establish probable cause for the issuance of criminal complaint and arrest warrants, I have not described all of the relevant facts and circumstances of which I am aware. In addition, when I rely on statements made by others, such statements are set forth in part and in substance

1

unless otherwise indicated. Facts not stated in this affidavit are not being relied upon to reach my conclusion that the court should issue a criminal complaint and arrest warrants.

**BACKGROUND**

4. A foreign national who is lawfully married to a United States citizen may seek to obtain permanent residence status in the United States.

5. To initiate the process of obtaining permanent residence status on the basis of a marriage to a United States citizen, the United States citizen spouse must file a visa petition (Form I-130), and the foreign national spouse must file an application for adjustment of status (Form I-485).

6. After the visa petition and adjustment application are filed, both spouses are required to participate in at least one interview with an Adjudications Officer ("AO") from the United States Citizenship and Immigration Services (the "U.S. CIS"), the government entity responsible for evaluating and granting petitions for permanent residence based upon marriages to United States citizens (the "immigration interview"). The spouses may be interviewed separately or together.

7. One of the purposes of the immigration interview is to attempt to determine whether the United States citizen spouse and the foreign national spouse entered into a valid marriage, or an unlawful marriage for purposes of evading the United States immigration laws (a "sham marriage"). A marriage is considered

2

valid if the United States citizen spouse and the foreign national spouse intended to establish a life together at the time of their marriage ceremony.

8.  After the immigration interview, the AO may then decide whether to grant or deny the visa petition and the application for adjustment of status. If the United States citizen spouse and the foreign national spouse were married less than two years prior to a grant of adjustment of status, the foreign national spouse is given permanent resident status on a conditional basis. If conditional resident status is granted, the spouses can later seek to remove the condition on residence, following the two year anniversary that such status was granted.

**PROBABLE CAUSE**

9.  On October 19, 2010, ICE SA Tara De Perte interviewed a reliable cooperating defendant ("CD") who is cooperating in the hopes of receiving a reduced sentence in connection with his/her own criminal case and learned the following:

   a.  CD, a citizen of the United States, married a People's Republic of China ("PRC") citizen for a monetary benefit of $15,000 and for the PRC citizen to obtain legal permanent residence in the United States.

   b.  The CD told SA De Perte that at the first meeting with the immigration document preparer, the preparer showed the CD a picture album of all of the fraudulent marriages the preparer had assisted with. Within the album was a picture of

someone known to the CD, Megan LIN, the petitioning United States citizen for CHEN.

    10. On July 14, 2011, I interviewed another reliable cooperating defendant ("CD#2") who is cooperating in the hopes of receiving a reduced sentence in connection with his/her own criminal case and learned the following:

        a. CD#2, a citizen of the United States, married a PRC citizen for a monetary benefit of $25,000 - $30,000 and for the PRC citizen to obtain legal permanent residence in the United States.

        b. CD#2 told me that he/she knew "Megan," and "Megan" entered into a fraudulent marriage just as CD#2 had done.

    11. On July 19, 2011, I interviewed Megan LIN at her home after she allowed myself and other agents to enter and learned the following:

        a. LIN, a citizen of the United States, married a PRC citizen for a monetary benefit of $15,000 and for the PRC citizen to obtain legal permanent residence in the United States.

        b. LIN told me the only reason she entered into this marriage was for the money. Once the immigration paperwork was completed, she very seldom spoke to CHEN.

        c. LIN and CHEN used the services of a large-scale marriage fraud preparer that is currently being investigated.

        d. LIN and CHEN provided Citizenship and Immigration Services ("CIS"), the following supporting materials to portray a

legitimate marriage: photos of them in various locations around the Los Angeles area, joint bank account statements, month-to-month rental agreement, Costco card, joint phone bill, joint tax filing, two witness affidavits and a Life insurance policy. LIN told me that each of these documents was submitted to CIS to make her marriage to CHEN appear to be legitimate.

   e. LIN said she had not spoken to CHEN for quite a while, but received a phone call from him a few months ago and CHEN stated, "I have not spoken to you for a while. It is time for the divorce."

   f. LIN and CHEN met at the preparer's office, received divorce paperwork, and LIN completed the paperwork at her house. She returned to the preparer's office at a later date with the completed divorce papers.

   12. I personally reviewed CHEN's Alien File and found a copy of a Los Angeles County marriage certificate marriage reflecting that CHEN and LIN were married on March 10, 2008 in El Monte, California. I also found numerous documents that LIN stated were submitted in connection with CHEN's immigration located within the file. Throughout the documents that CHEN and LIN submitted to CIS they claimed to be legitimately married. Based upon my investigation into this matter and the documents contained in CHEN's Alien File, I believe that several individual who played a role in CHEN and LIN's fraudulent marriage have also been involved in numerous other fraudulent marriages.

13. I am familiar with a related investigation by the Drug Enforcement Administration ("DEA") in which agents have identified twelve individuals as preparers or participants in a marriage fraud scheme. Two of the names identified on that list are LIN and CHEN.

14. Based on the foregoing and my experience and training, I believe that CHEN and LIN married for the purpose of evading a provision of immigration law, that is, the provision that allows the spouse of a United States citizen to legally reside in the United States and gain permanent lawful status in the United States. Thus, based on the foregoing and my training and experience I believe there is probable cause to believe that Chaoming CHEN, AKA: Chris CHEN, and Megan LIN have violated Title 8, United States Code, Section 1325(c).

_____
Aaron McClellan
Special Agent – HSI

Sworn to and subscribed to before me
this ___15th___ day of August, 2011

_____
UNITED STATES MAGISTRATE JUDGE

6